# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **GARY WAYNE HAMMONS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10CV00070 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III; Thomas C. Buchanan, Assistant Regional Counsel, Charles Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security disability case, I affirm the final decision of the Commissioner.

I

Plaintiff Gary Wayne Hammons filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income benefits pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 1381-1383d (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A.§ 1383(c)(3).

Hammons filed for benefits on March 5, 2007, alleging disability since January 1, 2003, due to back, ankle, and shoulder pain, as well as problems with his colon, eardrums, and anxiety. His claim was denied initially and upon reconsideration. Hammons received a hearing before an administrative law judge ("ALJ"), during which Hammons, represented by counsel, and an impartial vocational expert testified. The ALJ denied Hammons' claim and the Social Security Administration's Appeals Council denied his Request for Reconsideration. Hammons then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed and orally argued the issues. The case is ripe for decision.

II

Hammons was forty-six years old when he filed for benefits, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(c) (2010). Hammons, who has a high school education, has previously worked as a welder. Hammons has not engaged in substantial gainful activity since his welding company went out of business ten years ago.

Prior to Hammons' current application for benefits, he sought treatment from J. Thomas Hulvey, M.D., complaining of problems with his ankles. In January 2001, Dr. Hulvey performed left ankle surgery, stabilizing his medial malleolus with a cannulated screw and reverse block bone graft. Hammons' recovery was uneventful. Post-surgery, Dr. Hulvey noted that Hammons was "doing beautifully" and that he had "good motion" out of his cast. (Tr. 192.) While Dr. Hulvey indicated that Hammons would eventually be able to return to work, he also noted that Hammons would likely have "some permanent restrictions" on his ankle. (Tr. 192, 194.)

In February 2005, Hammons presented to Appalachian Medical Center for right shoulder pain. He was diagnosed with a tear in the distal supraspinatus tendon, degenerative change of the acromioclavicular joint, and a small joint effusion in the subacromial/subdeltoid bursa. (Tr. 229.) Hammons continued to visit Appalachian Medical Center on a bimonthly to quarterly basis for ongoing complaints of low back and shoulder pain. He generally showed a full range of motion in his musculoskeletal system. Although shoulder surgery was recommended, Hammons declined due to a lack of financial resources, and no alternative pain management options were indicated. (Tr. 213.)

In July 2006, Hammons visited the Wellmont Bristol Regional Medical Center emergency department, seeking treatment for problems in his left ear. He was diagnosed with swimmer's ear and prescribed amoxicillin. In February 2007, Hammons returned to the Wellmont Emergency Room for alcohol detoxification and knee pain after he fell out of bed. Hammons received an injection of Marcaine and a leg immobilizer.

In April 2007, Hammons again visited the Wellmont emergency department following a physical altercation. Hammons reported injuring his back after another man pushed him off his porch. CT and MRI scans of the thoracic and lumbar spine revealed a compression fracture at T-12. William A. McIlwain, M.D., an orthopedic consultant, opined that the fracture would heal without surgery. Jim C. Brasfield, M.D., who provided Hammons' follow-up care, assigned a thoracolumbosacral orthosis ("TLSO") brace for all weight-bearing activities. Hammons was thereafter assigned to wear the TLSO brace at all times by doctors at the University of Virginia Health Systems.

In July 2007, Hammons presented to the Appalachian Medical Center complaining of continued back pain that increased with movement but decreased with rest. However, diagnostic tests were unremarkable and musculoskeletal examinations were normal in November 2007 and February 2008. In March 2008,

Hammons was referred to the Southeastern Pain Management Center for right shoulder, low back, and right knee pain. Abnormal liver tests connected to his longstanding alcohol abuse, however, complicated pain management, and treating sources indicated that Hammons was late or absent from recommended pain management and gastroenterology referral appointments. When Hammons presented to Gastroenterology Associates in July 2008, he was diagnosed as suffering from alcoholic cirrhosis of the liver, but treating sources found his condition to be stable.

In May 2008, Hammons returned for treatment of swelling and bruising to his knee. He indicated his pain at a four out of ten on a scale of one to ten. He noted a better quality of life and satisfaction with his treatment plan. Follow-ups in July, August, and September of 2008 noted pain in his feet and lower back. Hammons received continuing pain and anti-anxiety medications at these appointments.

Hammons also complains of several mental impairments. The record indicates that Hammons suffered from a long history of alcohol abuse, and that multiple treating sources advised him he needed to stop drinking. In April 2007, Mark Laty, M.D., a psychiatric consultant, recommended that Hammons seek help with his alcohol problem and noted that his liver function tests were high. Dr. Laty

advised Hammons to stop drinking beer and prescribed him medication for anxiety. Further notes relating to Hammons' back injury revealed that his medicative treatment was necessarily limited by the side effects of his alcohol abuse. Although Hammons received anxiety medications over the years of treatment, he never sought specialized mental health care or counseling.

In May and August 2007, state agency physicians performed physical residual functional capacity assessments. Both physicians found that Hammons retained the abilities to lift twenty pounds occasionally and ten pounds frequently; stand or walk for about six hours, and sit for about six hours, in an eight-hour workday. They found that Hammons could frequently reach overhead, but could not operate push pedals with his lower extremities. Hammons was also limited in his abilities in climbing, balancing, stooping, kneeling, crouching, and crawling. The state agency physicians recommended no concentrated exposure to hazards, machinery, or heights.

During the same period, two state agency psychologists reviewed Hammons' records. They found that, due to the effects of prolonged alcohol abuse, depression, and anxiety, Hammons had mild restrictions in his activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in

maintaining concentration, persistence, or pace; and one to two episodes of decompensation.

In November 2008, Hammons received a hearing before an ALJ. The ALJ determined that further consultative psychological and physical examinations were required to determine the extent of Hammons' alleged impairments.

Thereafter, Hammons received a physical examination from William Humphries, M.D., with the Virginia Department of Rehabilitative Services in December 2008. Hammons identified his chief complaint as intermittent ankle pain. He also reported right shoulder, hand, and left knee discomfort that was exacerbated by frequent use. Hammons described his alcohol use as "occasiona[l] but not to excess," but admitted he had been diagnosed with cirrhosis. (Tr. 597-98.) At examination, Hammons had a back brace which he reported removing only at night or on need.

Dr. Humphries noted a moderately reduced range of motion in Hammons' lower back without significant scoliosis. Hammons suffered from moderate tenderness in his paraspinal muscles, but no spasms. Straight leg tests revealed some left knee discomfort in the sitting position, but no limits on the right side. Dr. Humphries noted slightly reduced range of motion in the shoulders, hips, and ankles. He additionally found mild synovial thickening of both ankle joints. Hammons

showed occasional antalegic gait due to lumbar discomfort, but he could briefly walk heel to toe with assistance for balance.

Dr. Humphries diagnosed cirrhosis of the liver by history; mild chronic obstructive pulmonary disease; posttraumatic degenerative joint disease in his ankles, left knee, and right hand; chronic lumbar strain; and mild to moderate degenerative joint disease in his hands, feet, and right shoulder. He opined that Hammons could sit for six hours and walk for two hours in an eight-hour workday. Dr. Humphries assessed that Hammons could lift twenty-five pounds occasionally and ten pounds frequently and occasionally climb, stoop, kneel, or crouch. Hammons was limited from crawling and exposure to heights, hazards, and fumes. Dr. Humphries additionally placed limitations against Hammons' abilities to reach with his right hand or operate foot controls.

Hammons also was seen for a psychological evaluation by a psychologist, Wade Smith. Hammons complained of back, hand, and ankle pain, as well as "frustration" and irritation with others. (Tr. 610.) Hammons was cooperative and appropriate during examination. Smith did not find signs of malingering, but did note that Hammons appeared to withhold effort during mental status tasks. Hammons' reported daily activities were unremarkable and included preparing his own meals, watching television, caring for his dogs, and housecleaning. Smith

-8-

noted that the sustainability of Hammons' activity level seemed somewhat limited by his back pain. Smith was ultimately diagnosed with non-specific anxiety disorder related to a general pain disorder and assessed with a GAF score of 55.[1]

Smith opined that Hammons' normal energy levels and his ability to understand and remember general concepts indicated skills adequate to meet the demands of simple or somewhat detailed work-related decisions. Smith did, however, find certain limits to Hammons' capabilities that would impair sustained mental effort, occasional responses of disproportionate anger, and irritability. Smith estimated that Hammons' physical problems could detract from his ability to maintain attendance or to keep an employment schedule.

After reviewing Hammons' records, the ALJ determined that Hammons suffered from severe impairments of alcoholic cirrhosis of the liver; chronic lumbar strain status post vertebral body fracture; degenerative joint disease of the ankles, left knee, hands, and right shoulder; and anxiety, but that these impairments did not meet or medically equal one of the listed impairments under the Act. (Tr. at 13-14.)

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

The ALJ dismissed Hammons' complaints of ear and colon problems as non-severe due to a lack of supporting objective medical evidence. Taking into account Hammons' limitations, the ALJ determined that Hammons retained the residual functional capacity to perform the full range of unskilled, light, sedentary work. Based on these findings, the ALJ concluded that Hammons was able to perform work existing in adequate numbers in the state and national economy and was therefore not disabled under the Act.

Hammons argues that the ALJ's decision is not supported by substantial evidence. For the reasons detailed below, I disagree.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

In Hammons' current appeal, he argues that the ALJ failed to properly evaluate the cumulative impact of his physical and mental impairments on his ability to work, and thus, that substantial evidence did not support the ALJ's conclusion that he was not disabled. In particular, he targets the ALJ's findings with regard to his non-exertional impairments.

Hammons argues that the ALJ did not grant sufficient weight to the psychological evaluation of Smith. In the evaluation, Smith indicated that Hammons' ongoing physical problems could interfere with his ability to maintain a regular employment schedule or to tolerate normal workplace stresses.

The ALJ has the exclusive authority to evaluate medical opinions in the record and, when assessing the weight given to a medical opinion, the ALJ should consider whether the opinion is supported by laboratory findings and the record as a

-12-

whole. 20 C.F.R. § 404.1527 (2010). When considering what weight to give an opinion, an ALJ must consider the length of a treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship. 20 C.F.R. §§ 404.1527, 416.927 (2010).

Unlike many of the Social Security appeals that come before this court, here the evaluations of Hammons' mental impairments by treating sources, consultative examinations, and the evaluations performed by state agency reviewing doctors, are markedly consistent. All the opinions in the case recognize that Hammons likely suffers from non-specific anxiety and depression, exacerbated by his physical pains. However, none of Hammons' alleged mental impairments have been severe enough to require formal psychiatric treatment, advanced medicative treatment, or more than minor restrictions to his daily activities.

Furthermore, to the extent that Hammons' suffers from mental and physical impairments, his alcohol use exacerbates his conditions because it prevents fully effective treatment. However, in evaluating whether alcoholism is a contributing factor material to the determination of disability, this court must look to whether the claimant's remaining conditions would be disabling if the claimant stopped using alcohol. *See* 20 C.F.R. § 404.1535 (2010). Here, I cannot find that Hammons

-13-

other conditions are independently disabling without his contributing alcoholism. *Id.*

Nevertheless, despite the scant medical evidence in support, the ALJ gave some credit to Hammons' claims of mental impairment. The ALJ assessed Hammons' anxiety as "severe" as defined under the Act. The further restriction in the ALJ's residual functional capacity assessment to unskilled work reflects the fact that the ALJ took into consideration the limits Smith opined in his evaluation of Hammons. Indeed, the ALJ's residual functional capacity assessment is largely consistent with Smith's report. Although Hammons' physical limitations did not indicate any restrictions beyond light, sedentary work, the ALJ further limited Hammons to unskilled work in order to account for his mental limitations. Smith found that Hammons would be capable of unskilled tasks. Because light, unskilled, sedentary work exists in multiple occupational categories in significant numbers in the national economy, the ALJ properly found that Hammons was not disabled under the Act. I find that substantial evidence exists to support the ALJ's decision.

V

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A

-14-

final judgment will be entered affirming the Commissioner's final decision denying benefits.

>	DATED: August 22, 2011
>
>	  /S/   JAMES P. JONES
>	United States District Judge